Jacob Markowitz, J.
In this article 78 proceeding petitioner seeks review of respondent’s order of August 7, 1970, denying petitioner’s protest and affirming an order of the District Rent Director of Manhattan relating to apartment 2C of 55 Central Park West.
Petitioner had applied for an increase of the maximum rent of the apartment under section 33.5 of the Rent, Eviction and Rehabilitation Regulations (6% fair return). The District Rent Director granted a nominal increase, but otherwise denied the application.
55 Central Park West is owned by Fifty-Five Corporation, a co-operative. Petitioner owns 192 of the 30,000 outstanding shares of the corporation and holds a proprietary lease to apartment 20. Petitioner’s decedent paid $17,800 for the stock in June of 1967. Apartment 2C is occupied by Lillian Kirsch as a statutory tenant. She has lived in the apartment for 30 years.
When the corporation bought the property does not appear from the return; nor does the record show when the building became a co-operative. The record also does not show whether petitioner’s decedent bought the stock directly from the corporation or from an earlier holder of a proprietary lease of the apartment.
Respondent based his determination on the 1968-1969 assessed valuation of the land and building.
As a sublessor, petitioner is a “ landlord ” under the rent law and the regulations thereunder (1ST. Y. City Rent, Eviction and Rehabilitation Law, § Y 51-3.0, subd. f; Regulations, § 2, subd. h). As such, he had the right to file the application for an increase of the maximum rent of the apartment (Regulations, § 33.5, subd. a).
Section Y51-5.0 (subd. g, par. [1]) of the rent law directs that the city rent agency shall make provision pursuant to regulations for individual adjustment of maximum rents where the rental income from the property yields a net annual return of less than 6% of the valuation of the property. “ Property ” is defined in the regulations as: “ Any structure or group of structures, including the land containing housing accommodations * * * which the Administrator shall in his discretion find appropriate to be considered as a single operation for the purpose of this section. The term 1 property ’ also includes housing accommodations allocated to a proprietary lease in a structure *454 or premises owned by a cooperative corporation or association.” (Regulations, § 33.5, subd. e, par. [4]).
Ordinarily the valuation used is the current assessed valuation (subd. b, par. [i]). However, the agency may make a determination that the value of the property is different from the assessed valuation, where there has been a bona fide sale of the property since February 1, 1961 at arm’s length, on normal financing terms, and unaffected by special circumstances (subd. b, par. [2]).
In Matter of Colton v. Berman (21 N Y 2d 322, 333) Judge Breitel observed: “ Tenants and landlord, from their various stances, seek to establish either a virtually uncontrolled discretion or a virtually unvarying mandate on the agency. The case history and the legislative history * * * make clear that the legislative purpose was to do neither but to strike a middle course. The statute was designed to prevent the agency from exercising an uncontrolled discretion and yet avoid a mandate which would permit lándlords to manipulate sales to provide a higher rent base nominally satisfying the several standards.”
As Froessel, J., writing for the court, put it in Matter of Ackerman v. Weaver (6 N Y 2d 283, 287) : “In mandating the use of bona fide sale price, the Legislature was not concerned with questions of investment, but simply recognized that such price provided ‘ a more accurate reflection of value’”. (See, also, Matter of Realty & Ind. Corp. v. Gaynor, 24 A D 2d 201, 203.)
Basically, then, the Commissioner is concerned with the fair or true value of the property when the application is made — and a fair return on that value. To summarily exclude from consideration a recent bona fide sale of the property is to decide the protest on an incomplete record and is unauthorized (Matter of Pay sony. Caputa, 9 AD 2d 226, 229, 233-234 ; see, also, Matter of Realty Sind. Corp. v. Gaynor, supra, pp. 203-204).
It is clear from respondent’s opinion that he did, indeed, disregard petitioner’s decedent’s cost of the stock and proprietary lease applicable to the apartment in reaching his conclusions. His attorney argues that the price paid for the shares was properly rejected by the Commissioner for valuation purposes. At best, he contends, the price paid for the stock was a fragmentation of the total price paid by the co-operative corporation years ago and did not constitute a sale of the property within the meaning of the rent law. The cases he cites are distinguishable; and the authorities point to the contrary (Matter of 1455 Realty Co. v. Berman, 21 N Y 2d 675, 677 ; Matter of Ackerman v. Weaver, *455 6 N Y 2d 283, 287, supra ; Matter of Edwards v. Kerman, 17 A D 2d 185 ; Matter of Quittner v. Kerman, 15 A D 2d 68; Matter of Jackman v. Herman, 34 Misc 2d 995 ; Matter of Management Holding Corp. v. Weaver, 10 Misc 2d 1000, 1002 ; Matter of Goldstein v. Weaver, 155 N. Y. S. 2d 185).
As noted, the term “ property ’ ’ under section 33.5 of the regulations includes housing accommodations allocated to a proprietary lease. The bona fides of petitioner’s decedent’s cost of these accommodations has at no time been questioned. Petitioner was therefore entitled to have such cost considered by the Commissioner when passing on the protest.
This is not to say that such cost must be accepted by the Commissioner. On a full record, should the Commissioner find that the price paid by petitioner’s decedent was affected by factors unassociated with value, or was, for other reasons, distorted or abnormal, it may be given only such weight as the Commissioner, in his discretion, may determine. On the other hand, if the assessed valuation of the land and building is found not to be a true reflection of the value of the property, it may not be used as the sole criterion (Matter of Jackman v. Kerman, 34 Misc 2d 995, 997, supra ; see, also, Matter of Ess Pee Bee Realty Corp. v. Gabel, 22 A D 2d 207, affd. 16 N Y 2d 524). However, “ as long as market value is reflected by the purchase price, and the seller has not unlawfully enhanced market value, there is no warrant for disregarding the sale price ’ ’ (Matter of Quittner v. Herman, 15 A D 2d 68, 69, supra).
The proceeding shall accordingly be remanded to the Commissioner. Upon such remand, the Commissioner shall take further proof in accordance with the views here expressed. This should include proof of the date when the building became a co-operative, what price the co-operative paid for the land and building, whether this price involved special circumstances, and, if so, what the property was then worth absent such special circumstances, whether the price paid by petitioner’s decedent was an aliquot part of the price paid by the co-operative or was otherwise arrived at, whether the cost of the stock purchased by decedent was distorted in any way by special circumstances which affected the price, and such other proof as the Commissioner may deem appropriate to determine the fair or true value of the apartment. Upon the record as so completed, the Commissioner shall redetermine petitioner’s application on the basis found by him to be applicable in the circumstances.